UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MSP RECOVERY CLAIMS, SERIES LLC and SERIES 17-04-631, a series of MSP Recovery Claims, Series LLC, | * * * * |
| Plaintiffs, | * * |
| v. | * Civil Action No. 18-cv-11702-ADB * |
| PLYMOUTH ROCK ASSURANCE CORPORATION, INC. and THE PLYMOUTH ROCK COMPANY, INC., | * * * * |
| Defendants. | * |

**MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE CLASS ALLEGATIONS**

BURROUGHS, D.J.

MSP Recovery Claims, Series LLC and Series 17-04-631 (together "MSPRC") bring this putative class action under the Medicare Secondary Payer Act ("MSPA") as the assignee of a Medicare Advantage Organization ("MAO"). Defendants Plymouth Rock Assurance Corporation, Inc. and The Plymouth Rock Company, Inc. (together "Plymouth") offer automobile insurance and frequently settle claims for injuries that result from accidents involving the individuals they insure. MSPRC argues that at least one of those settlements rendered Plymouth liable for medical expenses that had been paid by its assignor MAO and claims that Plymouth failed to reimburse that MAO. MSPRC brings a single claim against Plymouth pursuant to the MSPA's private cause of action, 42 U.S.C. § 1395y(b)(3)(A), for those medical expenses and for similar expenses incurred by other MAOs who Plymouth has not reimbursed. [ECF No. 1 ("Complaint" or "Compl.") ¶¶ 55–65]. Now pending before the Court are Plymouth's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and

12(b)(6), [ECF No. 8], and its motion to strike the class allegations, [ECF No. 11]. For the reasons discussed herein, the motion to dismiss [ECF No. 8] is **DENIED**, and the motion to strike [ECF No. 11] is **GRANTED**.

## I.    FACTUAL BACKGROUND

The following facts are drawn from the Complaint, the well-pleaded allegations of which are taken as true for the purposes of evaluating the motion to dismiss. See Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014) (citing A.G. ex rel. Maddox v. Elsevir, Inc., 732 F.3d 77, 80 (1st Cir. 2013). Certain details are also culled from documents attached to the Complaint and from documents whose authenticity is not disputed by the parties. See Alvarez-Mauras v. Banco Popular of P.R., 919 F.3d 617, 622 (1st Cir. 2019) (citing Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)).

MSPRC brings this action as the assignee of MAO Fallon Community Health Plan ("Fallon"). [ECF No. 1 ("Compl.") ¶¶ 7, 14].[1] On April 12, 2012, an individual named A.C., who later enrolled in a Medicare Advantage plan administered by Fallon, was injured in an accident. Id. ¶ 8. Between April 16, 2012 and August 30, 2013, A.C. received numerous medical services for accident-related injuries. Id. ¶ 9. One of A.C.'s medical providers billed Fallon $8,106.30 for accident-related services, and Fallon paid $1,782.02 to settle that charge. Id. ¶ 10.

Following the accident, A.C. asserted a claim against the tortfeasor involved in the accident, who was insured by Plymouth. Id. ¶¶ 8, 11. Plymouth settled A.C.'s claim against its

---

[1] This case is among many lawsuits that MSPRC and related or similar entities have commenced across the country under the MSPA's private cause of action, 42 U.S.C. § 1395y(b)(3)(A). See MSPA Claims 1, LLC v. Liberty Mut. Fire Ins. Co., 322 F. Supp. 3d 1273, 1276 n.2 (S.D. Fla. 2018) (collecting cases); see also [ECF No. 9 at 2 n.1].

insured, reported the settlement to the Centers for Medicare & Medicaid Services ("CMS"), and thereby became the primary payer for A.C.'s accident-related medical expenses. Id. ¶ 11. MSPRC alleges that, as of the date Plymouth notified CMS of the settlement, Plymouth knew it was obligated to reimburse Fallon for the $1,782.02 of accident-related medical expenses that Fallon had paid the medical provider for A.C. and yet nonetheless failed to reimburse Fallon. Id.

On June 19, 2017, Fallon assigned all rights to recover conditional payments made for its enrollees' healthcare services to MSP Recovery, LLC. Id. at 45. MSP Recovery, LLC then assigned all of the rights acquired from Fallon to Series 17-04-631, a designated series of MSP Recovery Claims, Series LLC. Id. at 53.

In addition to A.C.'s accident-related medical expenses, MSPRC asserts that Plymouth is the primary payer for numerous other medical expenses that it will be able to identify once it obtains and organizes data from Plymouth. See id. ¶ 51. MSPRC brings a single count to recover those expenses from Plymouth under the MSPA's private cause of action. Id. ¶¶ 55–65. The claim is brought on behalf of the following putative class:

> All Medicare Advantage Organizations, or their assignees, that provide benefits under Medicare Part C, in the United States of America and its territories, which made payments for a Medicare beneficiary's medical expenses where Defendant:
>
>> (1) is the primary payer by virtue of having settled a claim with Medicare beneficiary enrolled in a Medicare Advantage plan;
>>
>> (2) settled a dispute to pay for personal injuries with a Medicare beneficiary enrolled in a Medicare Advantage plan; and
>>
>> (3) failed to reimburse Medicare Advantage Organizations, or their assignees, the payments provided for medical items and services related to the claims settled by Defendant.
>
> This class definition excludes (a) Defendant, its officers, directors, management, employees, subsidiaries, and affiliates; and (b) any judges or justices involved in this action and any members of their immediate families.

Id. ¶ 45.

## II.     LEGAL FRAMEWORK FOR CLAIM

Traditional Medicare consists of Parts A and B of the Medicare Act.  See 42 U.S.C. §§ 1395c – 1395w-6.  These fee-for-service provisions entitle eligible persons to have CMS pay medical providers directly for hospital and outpatient care.  See id.  Medicare Part C is the Medicare Advantage program under which Medicare-eligible persons may elect to have an MAO such as Fallon, rather than CMS, provide Medicare benefits.  See 42 U.S.C. §§ 1295w-21 – 1395w-29.  Medicare Part D provides for prescription drug coverage, see 42 U.S.C. §§ 1395w-101 – 1395w-154, and Part E contains generally applicable definitions and exclusions, see 42 U.S.C. §§ 1395x – 1395lll.

"Before 1980, 'Medicare paid for all medical treatment within its scope and left private insurers merely to pick up whatever expenses remained.'"  Humana Med. Plan, Inc. v. W. Heritage Ins. Co., 832 F.3d 1229, 1234 (11th Cir. 2016) (quoting Bio-Med. Applications of Tenn., Inc. v. Cent. States Se. & Sw. Areas Health & Welfare Fund, 656 F.3d 277, 278 (6th Cir. 2011)).  "In 1980, in an effort to curb the rising costs of Medicare, Congress enacted the MSPA, which 'inverted that system; it made private insurers covering the same treatment the "primary" payers and Medicare the "secondary" payer.'  Medicare benefits became an entitlement of last resort, available only if no private insurer was liable."  Id. (citation omitted).  Under the current Medicare system, an automobile insurance provider or a similarly situated entity is the primary payer relative to Medicare or an MAO whenever its policy holders cause Medicare eligible expenses that are within its policy limits.  See 42 U.S.C. § 1395y(b)(2)(A).

In 1986, in an effort to "encourage private parties to bring actions to enforce Medicare's rights" under the MSPA and thereby reduce instances of primary payers failing to cover costs or to reimburse CMS, Congress created the MSPA's private cause of action.  See United Seniors

Ass'n v. Philip Morris USA, 500 F.3d 19, 22 (1st Cir. 2007). The private cause of action

provides:

> There is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A) [of 42 U.S.C. § 1395y(b)].

42 U.S.C. § 1395y(b)(3)(A). Paragraph (1) contains rules concerning group health care plans

and paragraph (2)(A) is a general prohibition on Medicare making payments for costs that a

primary payer, such as Plymouth or a similarly situated auto insurance provider, has paid or is

expected to pay. See Humana Med. Plan, 832 F.3d at 1234 (discussing MSPA's statutory

structure). MAOs such as Fallon did not exist when the MSPA's private cause of action was

enacted, and Congress likely therefore did not anticipate such plans bringing actions like that

brought here. The more probable scenario then was Medicare beneficiaries or their healthcare

providers suing to recover the costs of services that primary payers declined to cover. See id.[2]

In 1997, Congress enacted Part C of Medicare, the Medicare Advantage program,

including the provisions that allowed for the creation of MAOs. See id. at 1235 & n.3 (citing

Pub. L. No. 105-33, § 4001, 111 Stat. 251 (codified as amended at 42 U.S.C. §§ 1395w-21 –

1395ww-28)). "Congress's goal in creating the Medicare Advantage program was to harness the

power of private sector competition to stimulate experimentation and innovation that would

ultimately create a more efficient and less expensive Medicare system." In re Avandia Mktg.,

Sales Pracs. & Prods. Liab. Litig., 685 F.3d 353, 363 (3d Cir. 2012) (citing H.R. Rep. No. 105-

217, at 585 (1997), 1997 U.S.C.C.A.N. 176, 205–06 (Conf. Rep.)). Under the Medicare

---

[2] The MSPA's private cause of action is not a *qui tam* statute. See United Seniors Ass'n, v. Philip Morris USA, 500 F.3d 19, 25 (1st Cir. 2007). Plaintiffs who bring suit under 42 U.S.C. § 1395y(b)(3)(A) must prove their own damages and the statute "does not contemplate that the plaintiff share with the government in any monetary judgment." Id.

Advantage program, MAOs administer Medicare benefits pursuant to a contract with CMS, and CMS pays the MAOs a fixed fee per enrollee.  An MAO must provide its enrollees at least the same benefits as they would receive under traditional Medicare.  See 42 U.S.C. §§ 1395w-22(a), 1395w-23.  As of 2018, more than 20 million Americans, comprising 34 percent of Medicare beneficiaries, were enrolled in a Medicare Advantage plan.  See Gretchen Jacobson et al., A Dozen Facts About Medicare Advantage, Kaiser Family Foundation (Nov. 13, 2018), https://www.kff.org/medicare/issue-brief/a-dozen-facts-about-medicare-advantage/.

Medicare Part C includes a provision that allows MAOs to charge a primary payer, such as an auto insurance provider that insures a tortfeasor and thereby becomes a primary payer pursuant to the MSPA, or an individual who has received payments from such a primary payer. Specifically, "[o]rganization as secondary payer," provides:

> Notwithstanding any other provision of law, a [Medicare Advantage] organization may (in the case of the provision of items and services to an individual under a [Medicare Advantage] plan under circumstances in which payment under this subchapter is made secondary pursuant to section 1395y(b)(2) of this title) charge or authorize the provider of such services to charge, in accordance with the charges allowed under a law, plan, or policy described in such section--
>
> (A) the insurance carrier, employer, or other entity which under such law, plan, or policy is to pay for the provision of such services, or
>
> (B) such individual to the extent that the individual has been paid under such law, plan, or policy for such services.

42 U.S.C. § 1395w-22(a)(4).  Although this right to "charge" a primary payer does not itself vest MAOs with a cause of action, CMS regulations provide that an MAO may "exercise the same rights to recover from a primary plan, entity, or individual that the Secretary exercises under" other regulations addressing, inter alia, Medicare's right to recover conditional payments made to service providers from primary payers in accordance with the statutory exceptions to 42 U.S.C. § 1395y(b)(2)(a).  42 C.F.R. § 422.108(f); see also Parra v. PacifiCare of Ariz., Inc., 715

F.3d 1146, 1153 (9th Cir. 2013) ("On its face, the MAO Statute does not purport to create a cause of action.").[3]

The cause of action that permits the United States to bring an action "against any or all entities that are or were required or responsible" for payment under the MSPA is unavailable to MAOs. That government cause of action, however, also permits the United States to recover double damages from secondary payers in accordance with the MSPA's private cause of action. See 42 U.S.C. § 1395y(b)(2)(B)(iii). Several courts have reasoned that because the MSPA intended to provide an equal right to MAOs to recover from primary payers and because the government is entitled to recover double damages in accordance with the MSPA's private cause of action, MAOs should also be permitted to pursue claims against primary payers who have failed to reimburse them under that cause of action. See, e.g., Humana Med. Plan, 832 F.3d at 1234; In re Avandia, 685 F.3d at 363.

## III.    MOTION TO DISMISS

Plymouth moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. [ECF No. 8].

### A.    Legal Standard

When evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure

---

[3] Although "private rights of action to enforce federal law must be created by Congress," Alexander v. Sandoval, 532 U.S. 275, 286 (2001), courts accord considerable weight to executive departments' construction of statutory schemes that fall within their regulatory purview except where "Congress has directly spoken to the precise question at issue." Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 842, 844 (1984) ("We have long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations.").

12(b)(1) at the pleading stage, granting such a motion "is appropriate only when the facts alleged in the complaint, taken as true, do not justify the exercise of subject matter jurisdiction." <u>Muniz-Rivera v. United States</u>, 326 F.3d 8, 11 (1st Cir. 2003). "When a district court considers a Rule 12(b)(1) motion, it must credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor." <u>Merlonghi v. United States</u>, 620 F.3d 50, 54 (1st Cir. 2010). "In addition, the court may consider whatever evidence has been submitted, such as the depositions and exhibits submitted in this case." <u>Aversa v. United States</u>, 99 F.3d 1200, 1210 (1st Cir. 1996). "While the court generally may not consider materials outside the pleadings on a Rule 12(b)(6) motion, it may consider such materials on a Rule 12(b)(1) motion." <u>Gonzalez v. United States</u>, 284 F.3d 281, 288 (1st Cir. 2002), as corrected (May 8, 2002).

To withstand a motion to dismiss under Rule 12(b)(6), a complaint must allege a claim for relief that is "plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). Assessing the plausibility of a claim is a two-step process:

> First, the court must sift through the averments in the complaint, separating conclusory legal allegations (which may be disregarded) from allegations of fact (which must be credited). Second, the court must consider whether the winnowed residue of factual allegations gives rise to a plausible claim to relief.

<u>Rodriguez-Reyes v. Molina-Rodriguez</u>, 711 F.3d 49, 53 (1st Cir. 2013) (citation omitted). Along with all well-pleaded facts, the Court must draw all logical inferences from a complaint in favor of the plaintiff. <u>Frappier v. Countrywide Home Loans, Inc.</u>, 750 F.3d 91, 96 (1st Cir. 2014). "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." <u>Rodriguez-Reyes</u>, 711 F.3d at 53 (quoting <u>SEC v. Tambone</u>, 597 F.3d 436, 442 (1st Cir. 2010) (en banc)).

"When a court is confronted with motions to dismiss under both Rules 12(b)(1) and

12(b)(6), it ordinarily ought to decide the former before broaching the latter," because "if the court lacks subject matter jurisdiction, assessment of the merits becomes a matter of purely academic interest." Deniz v. Municipality of Guaynabo, 285 F.3d 142, 149–50 (1st Cir. 2002).

**B.** **Motion to Dismiss for Lack of Subject Matter Jurisdiction**

Plymouth asserts that MSPRC has not demonstrated that it holds a valid claim by assignment and therefore cannot establish standing to sue. [ECF No. 9 at 8–12, 25–28]. To satisfy the "irreducible constitutional minimum" of Article III standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016) (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992)). A party "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." Warth v. Seldin, 422 U.S. 490, 499 (1975). A plaintiff may, however, obtain standing to sue where it has received a valid assignment from a person who holds the rights to a claim. See Sprint Commc'ns Co. v. APCC Servs., Inc., 554 U.S. 269, 285 (2008) ("[T]here is a strong tradition specifically of suits by assignees for collection. . . . Lawsuits by assignees, including assignees for collection only, are 'cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process.'" (quoting Vt. Agency of Nat. Res. v. United States ex rel. Stevens, 529 U.S. 765, 777–78 (2000))).

Plymouth first argues that the purported assignment relied upon by MSPRC is facially invalid. [ECF No. 9 at 8–10]. MSPRC has, however, pled a proper assignment of the claim for medical expenses stemming from A.C.'s accident. The Complaint asserts the date of A.C.'s car accident, the amount billed to Fallon for accident-related medical services, the amount paid by

Fallon, that Plymouth reached a settlement with A.C. and became responsible as a primary payer, and that Plymouth nonetheless failed to reimburse Fallon. Compl. ¶¶ 8, 10–11.[4] MSPRC has also demonstrated a complete chain of assignments for its claim to recover for medical expenses related to A.C.'s injuries from Fallon to Series 17-04-631. The June 19, 2017 "Recovery Agreement" between Fallon and an entity identified as MSP Recovery, LLC states:

> [Fallon] hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and all of Client's right, title, ownership and interest in and to all Claims existing on the date hereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies for [Fallon] that [Fallon] had, may have had, or has asserted against any party in connection with the Claims and all rights and claims against primary payers and/or third Parties that may be liable to [Fallon] arising from or relating to the Claims, including claims under consumer protection statutes and laws, and all information relating thereto, all of which shall constitute the "Assigned Claims". The transfer, grant, right, or assignment of any and all of [Fallon's] right, title, ownership, interest and entitlements in and to the Assigned Claims shall remain the confidential and exclusive property of MSP Recovery or its assigns. This assignment is irrevocable and absolute.

Id. at 45 (emphasis removed). On June 20, 2017, MSP Record, LLC in turn assigned the claims it had received from Fallon to Series 17-04-631, LLC, a series of MSP Recovery Claims, Series LLC. Id. at 53.[5] Plymouth incorrectly asserts that the "Plaintiffs here are not even parties to any

---

[4] Some details of A.C.'s accident-related injuries and the associated claims remain unclear. For example, the Complaint claims that medical services were rendered between April 16, 2012 and August 30, 2013. See Compl. ¶ 9. The Complaint then asserts that Fallon paid $1,782.02 in accident-related costs, although it is unclear whether A.C. was enrolled in a Fallon administered MAO prior to January 1, 2014. See id. ¶¶ 7, 10. Nevertheless, the Complaint is sufficiently specific to put Plymouth on notice that MSPRC claims Plymouth should have reimbursed Fallon for $1,782.02 of A.C.'s accident-related medical costs.

[5] The specificity and clarity with which MSPRC has pled its claim for the reimbursement of medical expenses stemming from A.C.'s injury set this case apart from several other cases in which similarly situated entities made overly generic assertions. See MAO-MSO Recovery II, Mut. LLC v. Am. Family Mut. Ins. Co., No. 17-CV-175-JDP, 2018 WL 835160, at *5 (W.D. Wis. Feb. 12, 2018) (dismissing complaint where factual context was "so conclusory that they could apply to any one of the many lawsuits that plaintiffs have filed throughout the country"); MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co., No. 17-CV-01541-JBM-JEH, 2018 WL 340021, at *3 (C.D. Ill. Jan. 9, 2018) (dismissing complaint where plaintiffs "do not

assignment" given that Plaintiff Series 17-04-631, LLC was assigned the claim at issue.  See

[ECF No. 9 at 9].[6]  Under Delaware law, a series has "the power and capacity to, in its own

name, . . . sue and be sued."  Del. Code Ann. tit. 6, § 18-215(c).  Further, although MSP

Recovery Claims, Series LLC is not a party to the assignment, MRPRC has explained that MSP

Recovery Claims, Series LLC has the right to pursue claims arising from the rights assigned to

its series under its limited liability agreement.  See Compl. ¶ 23.

The Court also finds the argument that Fallon merely provided a contingent fee

agreement rather than an assignment unavailing.  See [ECF No. 9 at 11–12].  Plymouth is correct

that contingent fee agreements do not confer standing, see In re Comput. Eng'g Assocs., Inc.,

337 F.3d 38, 46 (1st Cir. 2003) ("assignor must divest itself of all right, interest, and control in

the property assigned"); Advanced Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11, 17–

18 (2d Cir. 1997) ("power of attorney . . . is not the equivalent of an assignment of ownership"),

but the assignment from Fallon is not merely a contingent fee agreement because the right to

pursue the assigned claims has been irrevocably transferred.  Although the assignment contains a

termination clause, that clause does not "affect or revoke any claims already assigned to MSP

---

allege particular and concrete injuries on behalf of [a beneficiary] or the representative MAO");
MAO-MSO Recovery II, LLC v. USAA Cas. Ins. Co., No. 17-20946-CIV, 2018 WL 295527, at
*4 (S.D. Fla. Jan. 3, 2018) (dismissing where facts were "insufficient to permit the Court to infer
the validity of the assignments"); MAO-MSO Recovery II, LLC v. Farmers Ins. Exch., No. 2:17-
CV-02522-CAS(PLAx), 2017 WL 5634097, at *7 (C.D. Cal. Nov. 20, 2017) (dismissing where
complaint lacked "sufficient facts to allow [the court] to infer the validity of the purported MAO
assignments").

[6] Series 17-04-631, LLC, a series of MSP Recovery Claims, Series LLC was assigned the claims
at issue by MSP Record, LLC, and Series 17-04-631, a series of MSP Recovery Claims, LLC is
one of the Plaintiffs that filed this action.  The Court accepts for purposes of the instant motion
that the discrepancy in whether the letters "LLC" appear after "Series 17-04-631" is the result of
a scrivener's error.  If "Series 17-04-631, LLC, a series of MSP Recovery Claims, Series LLC"
and "Series 17-04-631, a series of MSP Recovery Claims, LLC" are in fact separate entities,
MSPRC shall promptly inform the Court so that this issue may be revisited.

Recovery prior to the effective date of termination or which MSP Recovery has commenced recovery efforts." Compl. at 48.[7]

Plymouth also argues that even if the assignment appears valid, the MSPA's private cause of action, the basis for the assigned claim, provides no cause of action to MAOs and therefore Fallon could not have conveyed such claims. [ECF No. 9 at 13–21]. Considering the language of the private cause of action and the structure of Medicare Part C, the Court disagrees. The First Circuit has not expressly decided whether the private cause of action allows an action by an MAO. It has, however, considered the statute in a case concerning whether the private cause of action was a *qui tam* statute. See United Seniors Ass'n, 500 F.3d 19. In discussing whether § 1395y(b)(3)(A) qualifies as a *qui tam* statute, the First Circuit stated, "even assuming (as we do) that only Medicare beneficiaries can prosecute a private § 1395y(b)(3)(A) cause of action, those beneficiaries properly can be described as 'private attorneys general' to the extent that their very power to sue coincidently serves a pro-government purpose . . . ." Id. at 25. This dicta is at odds with the holdings of the Third and Eleventh Circuits and several district courts in other circuits that have held that an MAO may bring suit under the MSPA. See Humana Med. Plan, 832 F.3d at 1234; In re Avandia, 685 F.3d at 367; Humana Ins. Co. v. Paris Blank LLP, 187 F. Supp. 3d 676, 680 (E.D. Va. 2016); Humana Inc. v. Medtronic Sofamor Danek USA, Inc., 133 F. Supp. 3d 1068, 1078 (W.D. Tenn. 2015); see also Mich. Spine & Brain Surgeons, PLLC

---

[7] The confusion over the termination clause seems to stem from the fact that the assignment included an agreement to assign "Prospective Claims." [ECF No. 1 ("Compl.") at 45]; see Restatement (Second) of Contracts § 321(2) (Am. Law. Inst. 1981) ("a purported assignment of a right expected to arise under a contract not in existence operates only as a promise to assign the right when it arises and as a power to enforce it"). To the extent that the claims asserted here arose after the June 19, 2017 assignment, Plymouth may be able to demonstrate at the summary judgment stage that the claims were never properly assigned. A valid assignment, however, is not implausible and therefore does not require dismissal at this stage of the litigation.

v. State Farm Mut. Auto. Ins., 758 F.3d 787, 790 (6th Cir. 2014) (holding that private cause of action is also available to a healthcare provider who has not been paid by a primary plan, not only a beneficiary); Parra, 715 F.3d at 1152 (same).

This Court finds the Third Circuit's reasoning in In re Avandia Marketing, Sales Practices & Products Liability Litigation, 685 F.3d 353 (3d Cir. 2012), persuasive. The court held that an MAO may bring suit under § 1395y(b)(3)(A) where a primary payer fails to make payments pursuant to § 1395y(b)(2)(A). Id. at 365. As the court explained, § 1395y(b)(2)(A) provides that payments "under this subchapter" should not be made to service providers where a primary payer has or can reasonably be expected to make payment. Id. at 359–60. Conditional payments to service providers may, however, be made in some circumstances, for example where a potential primary payer has denied a claim. See 42 C.F.R. § 411.52(b). The Third Circuit reasoned that because "subchapter" as used in § 1395y(b)(2)(A) refers to the Medicare Act as a whole, § 1395y(b)(3)(A) allows an action by an MAO where it has been damaged by a primary payer's failure to reimburse it for conditional payments. See In re Avandia, 685 F.3d at 360. This understanding is also consistent with Congress's intention to place MAOs on the same footing as traditional Medicare. See supra Section II. As the Third Circuit concluded, "denying an MAO the rights to recovery provided to Medicare would undermine the very purpose of the [Medicare Advantage] program and [] Congress did not intend this result." In re Avandia, 685 F.3d at 363.[8] The Court concludes that an MAO may maintain an action under § 1395y(b)(3)(A).

_____

[8] Defendants have also argued that the contours of the private cause of action provided by § 1395y(b)(3)(A) should not be construed to allow a suit by an assignee, even if an MAO may bring suit under that statute. [ECF No. 9 at 9–10]. The text of the MSPA's private cause of action, however, contains no restriction on what type of person or entity may bring suit. The text of the cause of action permits an action by a person who has a claim for (1) damages, (2) against

The Court also disagrees with Plymouth's argument that the assignment should be held invalid because the cause of action is penal in that it allows a double recovery. See [ECF No. 9 at 9–10]. Where a statute creates a remedial cause of action that vests an individual with a valid claim, as the Court concludes occurred here, the assignment of those claims is permissible even where the statute provides double or treble damages. See Jefferson Cty. Pharm. Ass'n, Inc. v. Abbott Labs., 460 U.S. 150, 152 (1983) (upholding assigned claims for treble damages under the Robinson-Patman Act); Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc., 502 F.3d 91, 103 (2d Cir. 2007) (upholding assignment of antitrust claims and noting "such assignments are widely permitted, presumably in order to allow holders of claims to transfer the risk of loss to someone better able or more willing to pursue the claim or to undertake the risk"); Advanced Magnetics, 106 F.3d at 17 (holding securities claims were assignable). Additionally, the argument that the damages available through the MSPA's private cause of action renders it penal in nature ignores that fact that its purpose was to "reduce the cost of the Medicare program" and that it plays a remedial role by allowing private parties to recover from primary payers who fail to pay medical costs. See Humana Med. Plan, 832 F.3d at 1236 (holding that MAOs may seek recovery under the private cause of action); see also In re Avandia, 685 F.3d at 363 (same).

MSPRC has shown that it holds a facially valid irrevocable assignment of a claim that originated from Fallon and for which there is a valid cause of action. MSPRC has also plausibly alleged that Fallon's right to recover the $1,782.02 paid for the accident-related medical expenses that it incurred for A.C. was included in the assignment from Fallon, and it has therefore demonstrated standing and federal question jurisdiction.

---

a primary plan, which (3) has failed to provide primary payment in accordance with paragraphs (1) and (2)(A). See 42 U.S.C. § 1395y(b)(3)(A).

### C.    Motion to Dismiss for Failure to State a Claim

Plymouth argues that the claim should be also be dismissed because: (1) the complaint fails to establish Plymouth's "demonstrated responsibility" for the medical expenses at issue; (2) MSPRC failed to comply with applicable notice requirements; (3) the claim is barred by the statute of limitations; and (4) Defendant Plymouth Rock Company Inc. is not an insurer and therefore cannot be a primary payer under the MSPA.  See [ECF No. 9 at 21–25, 28–30].  The Court finds these arguments unavailing.

#### 1.    Demonstrated Responsibility

Plymouth argues that its responsibility as a primary payer has not been adequately demonstrated.  See id. at 21.  Plymouth relies on Glover v. Liggett Grp., 459 F.3d 1304 (11th Cir. 2006), where the Eleventh Circuit explained that until a defendant's "responsibility to pay for a Medicare beneficiary's expenses has been demonstrated (for example, by a judgment), [its] obligation to reimburse Medicare does not exist . . . ."  459 F.3d at 1309.  The Eleventh Circuit noted that a "tortfeasor's responsibility for payment of a Medicare beneficiary's medical costs must be demonstrated before an MSP private cause of action for failure to reimburse Medicare can correctly be brought under section 1395y(b)(3)(A)."  Id. (emphasis omitted).

Here, the Complaint alleges that Plymouth settled A.C.'s claim against its insured, was aware of "its responsibility to reimburse Fallon," and admitted that it "should have paid for A.C.'s accident-related injuries."  Compl. ¶ 11.  Taking these well-pled allegations as true, as the Court must at this stage, Plymouth was aware of its obligation to reimburse Fallon for A.C.'s accident-related medical services but failed to do so.  The Court notes, however, that while the allegations are well-pled as to Plymouth's obligation to pay medical expenses related to A.C.'s accident, claims related to other tortfeasors have not yet been alleged with sufficient particularity

to justify more wide-ranging discovery.  Cf. Hope v. Fair Acres Geriatric Ctr., 174 F. Supp. 3d 880, 891–92 (E.D. Pa. 2016) (dismissing MSPA claim where plaintiff had not demonstrated defendant's responsibility for any of the services rendered).

## 2. Notice Requirements

Plymouth next asserts that the claim should be dismissed because MSPRC has not shown its compliance with certain regulatory provisions.  The regulations applicable to potential primary payers provide, in pertinent part:

> (b) A primary payer's responsibility for payment may be demonstrated by—
> (1) A judgment;
> (2) A payment conditioned upon the beneficiary's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary payer or the primary payer's insured; or
> (3) By other means, including but not limited to a settlement, award, or contractual obligation.
> (c) The primary payer must make payment to either of the following:
> (1) To the entity designated to receive repayments if the demonstration of primary payer responsibilities is other than receipt of a recovery demand letter from CMS or designated contractor.
> (2) As directed in a recovery demand letter.

42 C.F.R. § 411.22(b)–(c).  Plymouth argues that the Complaint does not assert that Plaintiffs sent a "recovery demand letter" and that, even now, no clear amount payable has been alleged. [ECF No. 9 at 24–25].  MSPRC is not required to plead every individual act of compliance with a regulatory requirement in order to state a claim under § 1395y(b)(3)(A), and the Complaint is sufficiently specific in alleging that Plymouth knew that it was required to reimburse Plymouth's costs after it settled A.C.'s claim yet failed to do so.  Following discovery, MSRPC will be required to support its allegation that Plymouth had, or should have had, the necessary information to reimburse Fallon for the expenses at issue.

3.  Statute of Limitations

Although the private cause of action is silent as to the limitations period, see 42 U.S.C.

§ 1395y(b)(3)(A), the parties seemingly agree that a three-year statute of limitations applies, see

[ECF No. 9 at 28–29; ECF No. 18 at 19]; see also MSPA Claims 1, LLC v. Bayfront HMA Med.

Ctr., No. 17-CV-21733, 2018 WL 1400465, at *6 (S.D. Fla. Mar. 20, 2018) (holding that three-

year statute of limitations applies to a private action under the MSPA).  The parties disagree as to

when the statute of limitations for claims stemming from A.C.'s accident-related medical

expenses began to run.  Plymouth argues that the assignment only conveyed claims originating

from June 19, 2011 to June 19, 2015 and that the statute of limitations therefore expired before

the complaint was filed in August 2018.[9]  MSPRC asserts that although the costs for A.C.'s

accident-related medical expenses were incurred in 2012 and 2013 and were therefore included

in the assignment,[10] the statute of limitations only began to run once Fallon was on notice of the

settlement between Plymouth and A.C.  [ECF No. 18 at 19]; see Bayfront HMA Med. Ctr., 2018

WL 1400465, at *6 (indicating that the statute of limitations begins to run after notice of a

settlement, judgment, award, or other payment).

The Court assumes for the purposes of the motion to dismiss that the statute of limitations

began to run no earlier than the date Plymouth settled A.C.'s claims, because the settlement is

integral to demonstrating Plymouth's liability, which is necessary for suit.  See Glover, 459 F.3d

at 1309–10 (stating that Medicare is entitled to reimbursement after a favorable judgment or

---

[9] The assignment provides that "[b]ecause of a [] contractual commitment, [Fallon's] claims for
the most recent two year period are excluded from the definition of 'Assigned Claims.'  Compl.
at 43.

[10] Discovery may clarify whether claims related to A.C.'s medical expenses were excluded from
the assignment based on the date of the relevant settlement.  At this stage of the proceedings,
however, MSPRC is entitled to a presumption that its plausible understanding of its assigned
rights is correct.

settlement); MSPA Claims 1, LLC v. Liberty Mut. Co., No. 1:15-CV-21417-UU, 2015 WL 4511284, at *3 (S.D. Fla. July 22, 2015) ("simply alleging the existence of a contractual or statutory obligation does not mean that a responsibility to pay has been demonstrated"). But see MSP Recovery, LLC v. Allstate Ins., 835 F.3d 1351, 1362–63 (11th Cir. 2016) (holding that demonstrated responsibility requirement did not require a "judgment or settlement from a separate proceeding"). It is unclear when Fallon was on actual or inquiry notice of Plymouth's settlement with A.C., and the statute of limitations therefore presents a question that cannot be resolved at this stage. See [ECF No. 18 at 19 (asserting that MSPRC could not have received notice until at least June 2017)].

### 4. Defendant Plymouth Rock Company Inc.

Plymouth argues that the Court should dismiss Plymouth Rock Company Inc. because it is not an insurance company and cannot be a primary payer. [ECF No. 9 at 29–30]. MSPRC responds that Plymouth is engaged in a "shell game" in which The Plymouth Rock Company Inc., as the corporate parent of insurer Plymouth Rock Assurance Corporation, Inc, settles claims brought by tort victims to allow its insurance policy issuing subsidiary to maintain the façade that it has not settled relevant claims. [ECF No. 18 at 20]. In light of this allegation, the Court declines to dismiss Plymouth Rock Company Inc. at this time.

The motion to dismiss this action for lack of subject matter jurisdiction or failure to state a claim on which relief can be granted will therefore be denied.

## IV.    MOTION TO STRIKE CLASS CLAIM

Federal Rule of Civil Procedure 12(f) provides that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Although district courts may strike class allegations, caution is required "when

striking class action allegations based solely on the pleadings" because "'striking a portion of a pleading is a drastic remedy and ... it is often sought by the movant simply as a dilatory or harassing tactic.'" Manning v. Bos. Med. Ctr. Corp., 725 F.3d 34, 59 (1st Cir. 2013) (quoting 5C Charles Alan Wright, et. al., Federal Practice & Procedure § 1380 (3d ed. 2011)).  Striking class allegations is disfavored as it "preemptively terminate[s] the class aspects of ... litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled."  Id. (quoting Mazzola v. Roomster Corp., 849 F. Supp. 2d 395, 410 (S.D.N.Y. 2012)).  Sometimes, however, "the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim."  Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 160 (1982).

This case presents a rare instance in which striking the class allegations is appropriate for three reasons.  First, the class definition would include MAOs with claims that are time barred. "A court may strike class allegations that plainly encompass individuals whose claims are barred by jurisdictional or time limitations."  Monteferrante v. Williams-Sonoma, Inc., 241 F. Supp. 3d 264, 269 (D. Mass. 2017); see Barrett v. Forest Labs., Inc., 39 F. Supp. 3d 407, 458 (S.D.N.Y. 2014) (narrowing putative class to include only class members whose claims accrued within applicable limitations period).  MSPRC has acknowledged that a three-year statute of limitations applies, but it has made no effort to provide a temporal limit in its class definition.  See [ECF No. 18 at 19].  The class definition is therefore overbroad.

Second, the class is a "fail-safe class" because owning the rights to a claim for which Plymouth is liable is essentially a prerequisite for membership in the class.  Fail-safe classes are those that "cannot be defined until the case is resolved on its merits," Young v. Nationwide Mut.

Ins. Co, 693 F.3d 532, 538 (6th Cir. 2012), and are impermissible because they make it "virtually impossible for the Defendants to ever 'win' the case, with the intended class preclusive effects" as any class member against whom Defendant succeeds is thereby excluded from the class, In re Nexium Antitrust Litig., 777 F.3d 9, 22 n.19 (1st Cir. 2015). To avoid such impermissible classes, "[i]n approving a proposed class definition, [a court] must ensure that 'eligibility as a class member ... is not dependent upon a legal conclusion'" of liability. Campbell v. First Am. Title Ins. Co., 269 F.R.D. 68, 74 (D. Me. 2010) (citing Albertron v. Commonwealth Land Title Ins., 264 F.R.D. 203, 207 (E.D. Pa. 2010). Here, the class definition essentially mirrors the elements for a MSPA private cause of action. MSPRC asserts that the "private right of action has three straightforward elements: (1) the defendant's status as a primary plan; (2) the defendant's failure to provide for primary payment or appropriate reimbursement; and; (3) the damages amount." [ECF No. 19 at 1 (citing Humana Med. Plan, 832 F.3d at 1239)]. Those elements are each included within MSPRC's putative class definition, which requires class members be: (1) MAOs or assignees, (2) that made payments for medical services provided to a Medicare enrollee for its injuries, (3) for which Plymouth had the primary payment responsibility because it settled a Medicare enrollee's claim for medical services, and (4) for which Plymouth did not reimburse the MAO. See id. at 14. The class allegations may therefore be stricken because they seek to create an impermissible fail-safe class.

Third and lastly, even if a class of MAOs with viable claims could be ascertained and noticed, the pleadings and record demonstrate that the requirements of Federal Rule of Civil Procedure 23 will not be satisfied in this case because questions of law or fact common to class

members will not predominate.  <u>See</u> Fed. R. Civ. P. 23(b)(3).[11]  The Complaint asserts that

common issues of law and fact will predominate, but it belies that assertion by claiming that the

common issue will be whether Plymouth "failed to make required payments under the MSP

provisions and failed to reimburse Class Members."  Compl. ¶ 50.  This supposedly common

question would demand an individualized and fact-specific answer, not merely for each putative

class member, but for each of every purported class member's allegedly unreimbursed claims.

Liability for such claims may turn on issues such as whether a tortfeasor's claim settled, whether

Plymouth received the relevant information concerning medical costs and was therefore

logistically capable of paying particular charges, or whether a given plaintiff was actually

assigned the claim for which liability is alleged.  None of those issues will be common across

class members.

 Therefore, the class allegations are stricken from the Complaint.

## V. CONCLUSION

 Accordingly, the motion to dismiss [ECF No. 8] is **<u>DENIED</u>**, and the motion to strike

[ECF No. 11] is **<u>GRANTED</u>**.

 **SO ORDERED.**

July 18, 2019

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE

---

[11] The Complaint asserts a class in accordance with Federal Rule of Civil Procedure 23(b)(3).
<u>See</u> Compl. ¶ 50.