UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MSP RECOVERY CLAIMS, SERIES LLC and SERIES 17-04-631, <br><br> Plaintiffs, <br><br> v. <br><br> PLYMOUTH ROCK ASSURANCE CORPORATION, INC., and THE PLYMOUTH ROCK COMPANY, INC., <br><br> Defendants. | Civil Action No. 1:18-cv-11702-ADB |

## **MEMORANDUM AND ORDER ON PLAINTIFFS' MOTION FOR RECONSIDERATION**

BURROUGHS, D.J.

MSP Recovery Claims, Series LLC and Series 17-04-631 ("Plaintiffs") brought this putative class action against Plymouth Rock Assurance Corporation, Inc. and Plymouth Rock Company, Inc. (collectively "Plymouth Rock") under the Medicare Second Payer Act ("MSPA") as the assignee of a Medicare Advantage Organization ("MAO"). Plymouth Rock moved to dismiss the lawsuit and to strike the proposed class allegations. [ECF Nos. 8, 11]. The Court denied Plymouth Rock's motion to dismiss, [ECF No. 8], but granted the motion to strike, [ECF No. 11]. [ECF No. 26 ("Order")].

Presently before the Court is Plaintiffs' Motion for Reconsideration of the Order. [ECF No. 28]. For the reasons set forth below, Plaintiffs' Motion for Reconsideration [ECF No. 28] is DENIED.

## I. BACKGROUND

### A. Procedural Background

Plaintiffs filed this action on August 13, 2018. [ECF No. 1]. On December 21, 2018, Plymouth Rock filed both its motion to dismiss, [ECF No. 8], and its motion to strike the class allegations, [ECF No. 11]. On July 18, 2019, the Court denied the motion to dismiss, but granted the motion to strike. See generally [Order]. Plaintiffs filed their motion for reconsideration on August 15, 2019. [ECF No. 28]. Plymouth Rock opposed on August 29, 2019, [ECF No. 29], and Plaintiffs responded on September 11, 2019, [ECF No. 32].

### B. Factual Background

The following facts are drawn from the Complaint and the documents attached to it. [ECF No. 1 ("Complaint" or "Compl.")]. A more complete version of the facts is provided in the Court's earlier Order. [Order at 2–7].

Plaintiffs bring this action as the assignee of MAO Fallon Community Health Plan ("Fallon"). [Compl. ¶¶ 7, 14]. On April 12, 2012, an individual named A.C., who later enrolled in a Medicare Advantage plan administered by Fallon, was injured in an accident. [Id. ¶¶ 7–8]. Between April 16, 2012 and August 30, 2013, A.C. received medical services for injuries stemming from the accident. [Id. ¶ 9]. One of the medical providers treating A.C. billed Fallon $8,106.30. [Id. ¶ 10]. Fallon paid $1,782.02 to settle the charge. [Id.]

A.C. subsequently sued the tortfeasor involved in the accident, who was insured by Plymouth Rock. [Id. ¶¶ 8, 11]. Plymouth Rock settled A.C.'s claim and reported the settlement to the Centers for Medicare and Medicaid Services. [Id. ¶ 11]. Consequently, Plymouth Rock became the primary payer for A.C.'s medical expenses arising from the accident. [Id.]. On June 19, 2019, Fallon assigned all rights to recover conditional payments to MSP Recovery, LLC,

which subsequently assigned all of those rights to Series 17-04-631, a designated series of MSP Recovery, LLC. [ECF No. 1 at 53]. Plaintiffs claim that Plymouth Rock was aware that it was obligated to reimburse Fallon for the $1,782.02 payment, but failed to pay. [Compl. ¶ 11].

In addition to the specific payment in A.C.'s case, Plaintiffs proposed a putative class based on other alleged claims that Plymouth had failed to pay. [Compl. ¶ 51]. Plaintiffs proposed a class action on behalf of:

> All Medicare Advantage Organizations, or their assignees, that provide benefits under Medicare Part C, in the United States of America and its territories, which made payments for a Medicare beneficiary's medical expenses where Defendant:
>
> > (1) is the primary payer by virtue of having settled a claim with Medicare beneficiary enrolled in a Medicare Advantage plan;
> >
> > (2) settled a dispute to pay for personal injuries with a Medicare beneficiary enrolled in a Medicare Advantage plan; and
> >
> > (3) failed to reimburse Medicare Advantage Organizations, or their assignees, the payments provided for medical items and services related to the claims settled by Defendant.
>
> This class definition excludes (a) Defendant, its officers, directors, management, employees, subsidiaries, and affiliates; and (b) any judges or justices involved in this action and any members of their immediate families.

[Id. ¶ 45].

### C. The July 18, 2019 Order

On July 18, 2019, the Court denied Plymouth Rock's motion to dismiss, but granted its motion to strike Plaintiffs' class claim under Federal Rule of Civil Procedure 12(f). See generally [Order]. The Court first found that Fallon had assigned its interest in the claim to MSP Recovery, LLC, which in turn assigned its interest to Series 17-04-631, LLC, and that Plaintiffs could therefore pursue their interests through the MSPA's private cause of action, 42 U.S.C.

§ 1395y(b)(3)(A).[1] [Id. at 12–13]. The Court then found that Plymouth Rock was responsible as a primary payer and had properly been put on notice of Plaintiffs' claims, but denied the motion to dismiss because there was a dispute of fact concerning whether Plymouth Rock was put on notice within the applicable statute of limitations. [Id. at 15–18].

The Court did grant, however, Plymouth Rock's motion to strike. [Id. at 21]. Rule 12(f) provides that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The Court acknowledged that "[s]triking class allegations is disfavored as it 'preemptively terminate[s] the class aspects of . . . litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled,'" [Compl. at 19 (quoting Manning v. Bos. Med. Ctr. Corp., 725 F.3d 34, 59 (1st Cir. 2013)], but found that Plaintiffs' claim "present[ed] a rare instance in which striking the class allegations [wa]s appropriate for three reasons," [id.].

First, the Court found that the proposed class was overbroad, as it would include plaintiffs with time-barred claims. [Id. at 19]. Plaintiffs acknowledged that a three-year statute of limitations applied, which would make potential class members' claims untimely, but failed to provide any temporal limit in its class definition. [Id.].

Second, the Court found that the proposed class was a "fail-safe class," meaning that potential class members were essentially required to own rights to a claim for which Plymouth

---

[1] That section "established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) . . . ." 42 U.S.C. § 1395y(b)(3)(A).

4

Rock was liable. [Id. at 19–20].[2] Such circular definitions are "impermissible because they make it 'virtually impossible for the Defendants to ever 'win' the case, with the intended class preclusive effects' as any class member against whom Defendant succeeds is thereby excluded from the class." [Id. at 20 (quoting In re Nexium Antitrust Litig., 777 F.3d 9, 22 n.19 (1st Cir. 2015)]. Because membership in the proposed class would require demonstrating that Plymouth Rock had failed to provide primary payment or appropriate reimbursement, the Court found the "fail-safe class" impermissible. [Id.].

Finally, the Court determined that Plaintiffs could not demonstrate that questions of law or fact common to class members would predominate. [Id. at 20–21]. According to Plaintiffs, "the common issue will be whether Plymouth 'failed to make required payments under the MSP provisions and failed to reimburse Class Members.'" [Id. at 21 (Compl. ¶ 50)]. The Court found that membership in the class would depend on an individualized legal determination as to whether Plymouth Rock was liable and had failed to make required payments. [Id. at 20–21].

## II. DISCUSSION

Plaintiffs argue under Federal Rule of Civil Procedure 60(b)(6) that the Court should reconsider its Order because: (1) Plaintiffs have a software program that will resolve the individualized inquiries necessary to determine class membership; and (2) the Plaintiffs could revise the class allegations to address the Court's concerns regarding the proposed "fail-safe

---

[2] According to MSP Recovery, the MSPA private cause of action has three elements: "(1) the defendant's status as a primary plan; (2) the defendant's failure to provide for primary payment or appropriate reimbursement; and; (3) the damages amount." [ECF No. 19 at 2]. Its putative class definition required that class members be: "(1) MAOs or assignees, (2) that made payments for medical services provided to a Medicare enrollee for its injuries, (3) for which Plymouth had the primary payment responsibility because it settled a Medicare enrollee's claim for medical services, and (4) for which Plymouth did not reimburse the MAO." [Order at 20].

5

class." [ECF No. 28 at 2]. Neither argument presents the "extraordinary circumstances" necessary to justify relief under Rule 60(b)(6).

**A.     Legal Standard**

Federal Rule of Civil Procedure 60(b) provides six grounds upon which a court may relieve a party from an order. Fed. R. Civ. P. 60(b)(1)–(6). Relevant to consideration of Plaintiffs' motion is Rule 60(b)(6), which is a catchall provision that permits "the court [to] relieve a party . . . from a final judgment, order or proceeding for . . . any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). The Rule grants the Court the power to vacate judgments or orders "whenever such action is appropriate to accomplish justice." Bouret-Echevarría v. Caribbean Aviation Maint. Corp., 784 F.3d 37, 41 (1st Cir. 2015) (quotation marks omitted).

"[A] movant seeking relief under Rule 60(b)(6) [must] show 'extraordinary circumstances' justifying the reopening of a final judgment." Gonzalez v. Crosby, 545 U.S. 524, 535 (2005) (quoting Ackermann v. United States, 340 U.S. 193, 199 (1950)). "In determining whether extraordinary circumstances are present, a court may consider a wide range of factors. These may include, in an appropriate case, the risk of injustice to the parties and the risk of undermining the public's confidence in the judicial process." Sanchez v. United States, No.00-cv-00141, 2019 WL 2526727, at *2 (D.R.I. June 19, 2019) (quoting Buck v. Davis, 137 S.Ct. 759, 778 (2017)). More specifically, the Court can consider: (1) the motion's timeliness; (2) whether "exceptional circumstances justify extraordinary relief"; (3) whether the movant can show that their claim or defense would be meritorious at trial; and (4) "the likelihood of unfair prejudice to the opposing party." Bouret-Echevarria v. Caribbean Aviation Maint. Corp., 784 F.3d 37, 43 (1st Cir. 2015).

The parties here dispute only whether Plaintiffs have demonstrated exceptional circumstances that would justify extraordinary relief. See [ECF Nos. 28 at 3–10; ECF No. 29 at 2–9; ECF No. 32 at 1–3].

**B.     Analysis**

"Relief under Rule 60(b)(6) requires a showing that exceptional circumstances justify extraordinary relief." Bouret-Echevarria, 784 F.3d at 44. Plaintiffs argue, first, that the proposed class can be revised to address the Court's concerns that the proposed class was a "fail-safe class" and, second, that they have software that will identify potential class members and therefore alleviate concerns about whether common questions of law or fact will predominate. [ECF No. 28 at 2]. Neither argument warrants reconsideration.

First, Plaintiffs propose a new class which they believe would address the Court's concerns regarding time-barred claims and the class being a "fail-safe class." In its Order, the Court found that Plaintiffs had failed to provide a temporal limit to its proposed class. [Order at 19]. Plaintiffs now argue that the Court should narrow the class definition to include only claims that fall within the applicable three-year statute of limitations. [ECF No. 28 at 9]. MSP Recovery cannot use a motion for reconsideration to "raise arguments which could, and should, have been made" before the decision at issue. Harley-Davidson Motor Co., Inc. v. Bank of New England-Old Colony, N.A., 897 F.2d 611, 616 (1st Cir. 1990) (quoting FDIC v. Meyer, 781 F.2d 1260, 1268 (7th Cir. 1986)).

Plaintiffs further contend that the Court's concerns regarding the "fail-safe class" would also be rectified by refining the class definition. [ECF No. 28 at 9]. As a potential class, they propose "MAOs or assignees that paid for medical expenses on behalf of a Medicare beneficiary with whom Plymouth entered into a settlement." [Id. at 9–10]. The newly proposed class fails to

7

alleviate the Court's concern regarding the fail-safe class. See [Order at 20]. "The fail-safe appellation is simply a way of labeling the obvious problems that exist when the class itself is defined in a way that precludes membership unless the liability of the defendant is established." Campbell v. First Am. Title Ins. Co., 269 F.R.D. 68, 73–74 (D. Me. 2010) (quoting Kamar v. Radio Shack Corp., No. 09-55674, 2010 WL 1473877, at *1 (9th Cir. 2010)). "A fail-safe class 'is prohibited because it would allow putative class members to seek a remedy but not be bound by an adverse judgment—either those class members win or, by virtue of losing, they are not in the class and are not bound.'" In re Nexium Antitrust Litig., 777 F.3d at 22 n.19 (quoting Young v. Nationwide Mut. Ins. Co., 693 F.3d 532, 537 (6th Cir. 2012)). See, e.g., Schonton v. MPA Granada Highlands LLC, No. 16-cv-12151, 2019 WL 1455197, at *3 (D. Mass. Apr. 2, 2019) (finding that plaintiff's proposed class was a fail-safe class because class membership depended on demonstrating discrimination based on national origin, which was also the basis of the claim).

The newly proposed class of "MAOs or assignees that paid for medical expenses on behalf of a Medicare beneficiary with whom Plymouth entered into a settlement," [ECF No. 28 at 9–10], depends on the exact same legal conclusions as the original class. As the Court explained,

> Here, the class definition essentially mirrors the elements for a [Medicare Second Payer Act] private cause of action. [MSP Recovery] asserts that the "private right of action has three straightforward elements: (1) the defendant's status as a primary plan; (2) the defendant's failure to provide for primary payment or appropriate reimbursement; and; (3) the damages amount." Those elements are each included within [Plaintiffs'] putative class definition, which requires class members be: (1) MAOs or assignees, (2) that made payments for medical services provided to a Medicare enrollee for its injuries, (3) for which Plymouth had the primary payment responsibility *because it settled a Medicare enrollee's claim for medical services*, and (4) *for which Plymouth did not reimburse the MAO*.

[Order at 20 (emphasis added)]. Plaintiffs' newly proposed class would still require that class members be "[1] MAOs or assignees [2] that paid for medical expenses on behalf of a Medicare

8

beneficiary [3] with whom Plymouth entered into a settlement" and [4] had not been reimbursed, as the potential class member would otherwise be uninjured. [ECF No. 28 at 9–10]. Therefore, the now-proposed class is still a "fail-safe class."

Second, Plaintiffs claim that they have a software program that would allow them to match Medicare beneficiaries and assignor payments with third-party databases in order to determine each instance in which Plymouth Rock reported a responsibility to pay CMS and then failed to pay. Plaintiffs would then identify whether Plymouth had entered into a settlement with enrollees of potential class members' assignors by reviewing Plymouth's reports to CMS. [ECF No. 28 at 5]. Those reports would "trigger liability," because "[e]ach time Plymouth reports a responsibility to pay to CMS, its status as a primary payer is confirmed." [Id.].

Software that identifies instances in which Plymouth Rock has settled would still fail to demonstrate that common questions of law or fact predominate. Under 42 U.S.C. § 1395y,

> a primary plan, and an entity that receives payment from a primary plan, shall reimburse the appropriate Trust Fund for any payment made by the Secretary under this subchapter with respect to an item or service *if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service*. A primary plan's responsibility for such payment may be demonstrated by a judgment, *a payment conditioned upon the recipient's compromise*, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means.

42 U.S.C. § 1395y(b)(2)(B)(ii) (emphasis added). In its Order striking class allegations, the Court understood that membership in the proposed class was contingent upon Plymouth Rock's settling with a primary payer and then failing to pay. [Order at 3]. It was not the practicality of identifying settlements that led the Court to determine that common questions of law or fact would not predominate.

Federal Rule of Civil Procedure 23(b)(3) requires a showing that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "In adding predominance and superiority to the qualification-for-certification list, the Advisory Committee sought to cover cases in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 615 (1997) (internal quotation marks omitted).

The Court disagreed with Plaintiffs' claim that a common issue would be whether Plymouth Rock "failed to make required payments under the MSP provisions and failed to reimburse Class Members." [Order at 21 (quoting Compl. ¶ 50)]. As the Court explained in its Order, "This supposedly common question would demand an individualized and fact-specific answer, not merely for each putative class member, but for each of every purported class member's allegedly unreimbursed claims." [Order at 21].

For example, considering the representative class member, A.C., Plaintiffs allege "that, as of the date Plymouth notified CMS of the settlement, Plymouth knew it was obligated to reimburse Fallon for the $1,782.02 of the accident-related medical expenses that Fallon had paid the medical provider for A.C. and nonetheless failed to reimburse" MSP Recovery. [Order at 3]. Yet, A.C. executed a Release and Settlement agreement which provided that she agreed "to indemnify and save harmless . . . Plymouth Rock . . . and all other persons, firms and corporations, from and against all claims and demands whatsoever on account of, or in any way growing out of, said occurrence and/or its results both to person and property." [ECF No. 29 at

10

9]. The Court would therefore have to engage in an individualized and fact-specific inquiry for every putative class member. "Liability for such claims may turn on issues such as whether a tortfeasor's claim settled, whether Plymouth received the relevant information concerning medical costs and was therefore logistically capable of paying particular charges, or whether a given plaintiff was actually assigned the claim for which liability is alleged." [Order at 21].

### III. CONCLUSION

Accordingly, Plaintiffs' Motion for Reconsideration [ECF No. 28] is <u>DENIED</u>. Plaintiffs' newly proposed class is both untimely and a fail-safe class. Further, Plaintiffs' proposed software, which would identify instances in which Plymouth Rock reported a settlement to CMS, would not address the Court's concerns regarding the individualized and fact-specific inquiries necessary to determine class membership.

**SO ORDERED.**

December 12, 2019  /s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE